IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

FILED
JAMES BONINI
CLERK

2010 JUL 16 P 3: 47

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
AST. DIV. COLUMBUS

| | | |
|---|---|---|
| VIRGINIA STARK<br>2634 Pennbrook Court<br>Hilliard, Ohio 43026 | : | |
| Plaintiff, | : | Case No. 2:10 cv 642 |
| vs. | : | Judge JUDGE GRAHAM |
| MARS, INC.<br>c/o General Counsel<br>Americas Treasury and<br>Benefits Center<br>100 International Drive<br>Mount Olive, N.J. 07828 | : | MAGISTRATE JUDGE ABEL |
| MARS BENEFIT PLANS<br>COMMITTEE<br>c/o General Counsel<br>Americas Treasury and<br>Benefits Center<br>100 International Drive<br>Mount Olive, N.J. 07828 | : | |
| MARS BENEFIT PLANS<br>APPEAL COMMITTEE<br>c/o General Counsel<br>Americas Treasury and<br>Benefits Center<br>100 International Drive<br>Mount Olive, N.J. 07828 | : | |
| STATE STREET BANK<br>c/o CT Corporation System<br>155 Federal Street, Suite 700<br>Boston, MA 02110 | : | |
| Defendants. | : | |

## COMPLAINT

### PARTIES AND JURISDICTION:

1. Plaintiff Virginia Stark is an individual who resides in Franklin County, Ohio.

2. Defendant Mars, Inc. is a New Jersey corporation with its principal place of business in New Jersey.

3. Defendant Mars Benefit Plans Committee is a New Jersey corporation with its principal place of business in New Jersey.

4. Defendant Mars Benefit Plans Appeal Committee is a New Jersey corporation with its principal place of business in New Jersey.

5. State Street Bank is a Massachusetts corporation with its principal place of business in Massachusetts.

6. Jurisdiction is proper under 28 U.S.C. § 1331 and the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461.

## FACTS:

7. On May 31, 1982, Ms. Stark began her employment at Kal Kan Foods, Inc., which is a Division of Mars, Inc., in Franklin County, Ohio.

8. On September 4, 2004, Ms. Stark's employment with Kal Kan Foods, Inc. ended.

9. On August 4, 2008, Ms. Stark received a letter informing her that she was eligible to elect Associate Retirement Plan Benefits, which is a covered plan as contemplated by ERISA.

10. On February 9, 2009 Ms. Stark logged onto the website associated with the Plan in order to research her pension payment options. This website allows an eligible pension recipient to forecast pension payments based on the particular plan option and the date that the plan is elected. The actuarial information and formula used to calculate benefits, however, is not provided. As such, Ms. Stark had to rely upon the website to forecast her pension payments.

11. On this date, the information on the website provided that the monthly payouts to Ms.

Stark as of June 30, 2009, and as of December 30, 2009, for the Single Life Annuity with 5-Year Certain pension payment option was $5,365.

12. On or around February 11, 2009, Ms. Stark spoke with an employee and/or agent of Defendants, at which time she inquired about her payment options and requested a Pension Estimate Calculation Statement for benefits commencing April and/or May of 2009.

13. Ms. Stark was told at this time that her pension benefits would be $5,365 per month as of April of 2009 and $5,368 per month as of May of 2009.

14. Sometime between February 13, 2009, and February 15, 2009, Ms. Stark received a Formula Pension Estimate Calculation Statement, dated February 11, 2009, which was a print-out version of the information that she had received on the website.

15. This Calculation Statement represented that the monthly payouts to Ms. Stark or to her beneficiary as of June 30, 2009, and as of December 31, 2009, for the Single Life Annuity with 5-Year Certain pension payment option was $5,364.63.

16. Also between February 13, 2009, and February 15, 2009, Ms. Stark received the benefits statement that she had requested during her February 11, 2009 telephone conversation. The monthly payment amounts reflected on this statement correspond with the amounts that had been given to her on the website as well as on the February 11, 2009 USRP-ARP Formula Pension Estimate Calculation Statement.

17. On or around February 18, 2009, Ms. Stark again spoke with an employee and/or agent of Defendants, at which time Ms. Stark asked Defendants to confirm that the $5,364.63 payment was accurate and the employee and/or agent of Defendants confirmed that the payment amount was accurate.

18. During this conversation, Ms. Stark elected to begin receiving payments pursuant to the Single Life Annuity with 5-Year Certain pension payment option.

19. Ms. Stark's decision to select the Single Life Annuity with 5-Year Certain pension payment option was based solely on her reasonable reliance on the representations made on the website, on the Formula Pension Estimate Calculation Statement, and during the telephone conversations. Ms. Stark made decisions to her detriment in reliance upon the representations made to her by Defendants including, but not limited to, making purchase decisions and entertainment plans, doing landscaping projects and undertaking home improvements.

20. On or around February 24, 2009, Ms. Stark received a letter, dated February 18, 2009, requesting that she certify with her signature her elections for the USRP-ARP Formula.

21. The USRP-ARP Formula Pension Election Authorization Form, which was provided with this letter, represented that this election would pay $5,364.63 per month.

22. On February 24, 2009, Ms. Stark signed the USRP-ARP Formula Pension Election Authorization Form and thereafter returned it as was instructed.

23. From March 31, 2009 through July 31, 2009, Ms. Stark received five monthly payments of $5,364.63 less taxes, each of which was received on the last day of the month.

24. On August 3, 2009, Ms. Stark received a phone call informing her that her pension calculation had been incorrect and that she would be receiving a letter regarding the incorrect calculation. This letter was subsequently scanned and emailed to her.

25. This letter, dated July 31, 2009, stated that there was an error in the calculation of Ms. Stark's monthly pension payments and that the correct amount of monthly pension payments was $2,303.12. The letter further explained that because she had received

4

excess payments during the previous five months totaling $15,307.25, her monthly payments would be further reduced from $2,303.12 to $2,199.93 in order to repay the overpayment plus interest.

26. On August 31, 2009, Ms. Stark began receiving monthly payments of $2,199.93.

27. On September 29, 2009, Ms. Stark sent a formal Claim Letter to the Plan Administrator.

28. On December 23, 2009, Ms. Stark's request to reinstate the monthly payment of $5,364.63 was denied.

29. On February 11, 2010, Ms. Stark appealed the partial denial of her claim.

30. On April 12, 2010, Defendants denied Ms. Stark's appeal.

## COUNT ONE: BREACH OF FIDUCIARY DUTY

31. Defendants exercise discretionary authority or control respecting management of the Plan and/or disposition of its assets and/or have discretionary authority or discretionary responsibility in the administration of the Plan.

32. Thus, Defendants are fiduciaries as it is defined under 29 U.S.C. § 1002(21)(A) of ERISA.

33. Defendants were acting in a fiduciary capacity when they represented to Ms. Stark that her monthly payments under the Single Life Annuity with 5-Year Certain pension payment option would be $5,364.63.

34. The representations that Ms. Stark's monthly payments under the Single Life Annuity with 5-Year Certain pension payment option would be $5,364.63 was material.

35. Ms. Stark relied on these misrepresentations to her detriment.

36. Defendants failed to exercise their duties with the care, skill, prudence, and diligence of a prudent person acting under similar circumstances.

37. Defendants breached their fiduciary duty imposed upon them by 29 U.S.C. § 1104(a)(1).

## COUNT TWO: PROMISSORY ESTOPPEL

38. Defendants made a promise that Ms. Stark would receive $5,364.63 under the Single Life Annuity with 5-Year Certain pension payment option.

39. Defendants reasonably should have expected that this promise would induce Ms. Stark to choose this option.

40. Ms. Stark did in fact choose this option.

41. Injustice can only be avoided by enforcement of the promise, i.e., by paying Ms. Stark the $5,364.63 a month that she was promised.

## COUNT THREE: EQUITABLE ESTOPPEL

42. Defendants' various statements that Ms. Stark's monthly payments under the Single Life Annuity with 5-Year Certain pension payment option would be $5,364.63 amounted to representations of material fact.

43. Defendants were aware that Ms. Stark was entitled to no more than $2,303.12 a month under the Single Life Annuity with 5-Year Certain pension payment option.

44. Ms. Stark reasonably believed that Defendants intended for their representations to be acted on by Ms. Stark.

45. Ms. Stark was unaware that, in actuality, she was entitled to no more than $2,303.12 a month under the Single Life Annuity with 5-Year Certain pension payment option.

46. Ms. Stark detrimentally and justifiably relied on the representations made by Defendants.

47. Defendants should be equitably estopped from paying to Ms. Stark less than the $5,364.63 that Ms. Stark is entitled.

**WHEREFORE**, Plaintiff Virginia Stark demands judgment against Defendants, for

compensatory damages in an amount to be determined at trial, for punitive damages in an amount to be determined at trial, for interest, prejudgment interest, post-judgment interest, her costs herein expended, and attorneys fees on any judgment she obtains, and for such other or further relief to which this Court may find her entitled.

    Respectfully submitted,

    **LANE, ALTON & HORST LLC**

    _____
    Christopher R. Pettit (0069926)
    Ray S. Pantle        (0082395)
    Two Miranova Place, Suite 500
    Columbus, Ohio 43215
    Tele: (614) 228-6885
    Fax: (614) 228-0146
    E-mail: cpettit@lanealton.com
           rpantle@lanealton.com
    *Attorneys for Plaintiff Virginia Stark*