IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Virginia Stark,

      Plaintiff,

    v.                            Case No. 2:10-cv-642

Mars, Inc., et al.,

      Defendants.


OPINION AND ORDER

This is an action brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") and federal common law. Plaintiff Virginia Stark was an employee of Kal Kan Foods, Inc., a division of defendant Mars, Inc. ("Mars"), from 1982 to 2004. First Am. Compl., ¶¶ 6-7. The other named defendants are the Mars Benefit Plans Committee ("the Committee") and the Mars Benefit Plans Appeals Committee ("the Appeals Committee").[1]

Plaintiff filed her complaint on July 16, 2010, and her first amended complaint on September 10, 2010. Plaintiff alleges in the first amended complaint that she received a letter on August 4, 2008, advising her that she was eligible to elect pension benefits under the Associate Retirement Plan ("ARP") provisions of the U.S. Retirement Plan ("the Plan"). First Am. Compl., ¶ 8. On February 9, 2009, plaintiff utilized the website made available by Mars and the Committee to research her payment options. This website allows participants to estimate their pension payments based on the plan option and the date of election, but did not supply the underlying

---

[1]Defendants indicate that the correct name of the Committee is the Mars, Incorporated U.S. Benefit Plans Committee, and that the correct name of the Appeals Committee is the Mars, Incorporated Appeals Committee. Doc. 12, p. 1.

actuarial formulas used to calculate benefits.  First Am. Compl., ¶ 9.  According to the website, the monthly pension benefit to plaintiff as of June 30, 2009, and December 30, 2009, for a single life annuity with a five-year certain payment option was $5,365. First Am. Compl., ¶ 10.

On February 11, 2009, plaintiff spoke with an employee of Mars and/or the Committee, and requested a Pension Estimate Calculation Statement for benefits commencing in April or May of 2009.  First Am. Compl., ¶ 11.  Plaintiff was informed that her pension benefits would be $5,365 per month as of April, 2009, and $5,468 per month as of May, 2009.  First Am. Compl., ¶ 12.  On or before February 15, 2009, plaintiff received a Pension Estimate Calculation Statement from Mars and/or the Committee dated February 11, 2009, a print-out version of the information plaintiff received on the website, which stated that the monthly payments to plaintiff as of June 30, 2009, and December 31, 2009, for a single life annuity with the five-year certain payment option was $5,364.63.  First Am. Compl., ¶¶ 13-14.  On or before February 15, 2009, plaintiff also received the benefit calculation she had requested during the telephone conversation on February 11, 2009, and the monthly payment amounts in this statement corresponded to the amounts given to her on the website and on the website statement she received. First Am. Compl., ¶ 15.

On February 18, 2009, plaintiff spoke with an employee of Mars and/or the Committee, and asked for confirmation that the $5,364.63 payment was accurate, and she was informed that this amount was accurate.  First Am. Compl., ¶ 16.  Plaintiff elected during this conversation to begin receiving pension benefits.  First Am. Compl., ¶ 17. Plaintiff further alleges that on February 24, 2009,

she received a letter dated February 18, 2009, from Mars and/or the Committee requesting her signature on a USRP-ARP Formula elections form. On this form, it was represented that this election would pay $5,364.63 per month. First Am. Compl., ¶¶ 19-20. Plaintiff signed the form and returned it. First Am. Compl., ¶ 21. At the time of the election, plaintiff had not yet reached the age of 65. Doc. 17, Ex. B.

Plaintiff further alleges that her decision to elect the single life annuity option was based solely on the representations made by Mars and/or the Committee on the website and during the telephone conversations, and that she relied on these representations by making purchase decisions and entertainment plans, doing landscaping projects and undertaking home improvements. First Am. Compl., ¶ 18. From March 31, 2009, through July 31, 2009, she received five monthly payments of $5,364.63, less taxes. First Am. Compl., ¶ 22.

Plaintiff alleges that on August 3, 2009, she received a telephone call from Mars and/or the Committee informing her that her pension benefit had been calculated incorrectly. First Am. Compl., ¶ 23. She then received a letter dated July 31, 2009, informing her that there was an error in the calculation of her monthly pension benefit, and that the correct amount of her monthly benefit was $2,303.12. The letter further stated that her monthly payments would be reduced to $2,199.93 to satisfy the overpayment of $15,307.25, plus interest. First Am. Compl., ¶ 24. On August 31, 2009, plaintiff began receiving a monthly payment of $2,199.93. On September 29, 2009, plaintiff sent a claim letter to the Plan administrator, and on December 23, 2009, her request for monthly payments in the amount of $5,364.63 was denied. First Am. Compl.,

3

¶¶ 26-27.  On February 11, 2010, plaintiff appealed the denial of the higher benefit amount to the Appeals Committee, and on April 12, 2010, her appeal was denied.  First Am. Compl., ¶¶ 28-29; Doc. 17, Ex. B.

In Count One of the first amended complaint, plaintiff asserts a claim for breach of fiduciary duty based on defendants' alleged misrepresentations.  First Am. Compl., ¶¶ 30-37.  In Count Two, plaintiff asserts a claim of promissory estoppel.  First Am. Compl., ¶¶ 38-42.  In Count Three, plaintiff asserts a claim of equitable estoppel.  First Am. Compl., ¶¶ 43-49.  In Count Four, plaintiff asserts a claim for denial of benefits pursuant to 29 U.S.C. §1132(a)(1)(b).

I. Motion to Amend Complaint

On October 26, 2010, plaintiff filed a motion for leave to amend the first amended complaint by deleting Counts One and Four from the complaint.  Pursuant to Fed.R.Civ.P. 15(a)(2), where a party has already amended its pleading once as a matter of course, a party may later amend its pleading "only with the opposing party's written consent or the court's leave."  Fed.R.Civ.P. 15(a)(2).  Rule 15 further states that the "court should freely give leave when justice so requires." Rule 15(a)(2); see Foman v. Davis, 371 U.S. 178, 182 (1962).  However, a "district court, generally speaking, has considerable discretion in deciding whether to grant" a Rule 15(a)(2) motion.  Leisure Caviar, LLC v. United States Fish and Wildlife Serv., 616 F.3d 612, 615 (6th Cir. 2010). "A motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." Colvin v. Caruso, 605 F.3d 282, 294 (6th Cir. 2010)(quoting Crawford v.

4

<u>Roane</u>, 53 F.3d 750, 753 (6th Cir. 1995)).  Courts have also expressed reluctance to grant a motion to amend which seeks to drop claims apparently in order to avoid the impact of a pending dispositive motion.  <u>See Lowe's Home Ctrs., Inc. v. Olin Corp.</u>, 313 F.3d 1307, 1315 (11th Cir. 2002); <u>Parish v. Frazier</u>, 195 F.3d 761, 764 (5th Cir. 1999).

Plaintiff has requested a dismissal of Counts One and Four "without prejudice so that she can re-assert these causes of action in the event that this Court determines that they are supported by the facts of this case."  Doc. No. 15, p. 2.  However, it is not the role of this court to advise plaintiff to seek to re-file these claims if and when future developments in the case indicate that her chances of prevailing on these claims have improved.  The request to dismiss without prejudice also raises concerns regarding the possibility of future prejudice to the defendants and delays. The four claims in the complaint are factually related, and in the interests of judicial economy, as well as the parties' expenditure of time and money, they should be addressed together.  If Counts One and Four are dismissed without prejudice and plaintiff later seeks to amend her complaint to re-assert them after discovery on the other counts is completed and substantial time has passed, this could result in delays in the resolution of the case and additional costs to the defendants.  If plaintiff has any intent to pursue a claim for denial of benefits under §1132(a)(1)(B) or for breach of fiduciary duty, the time to do so is now.[2]  Since plaintiff's

---

[2]Litigating Counts One and Four along with plaintiff's other claims in a single action would also promote the goal of prompt resolution of claims against the Plan which is evidenced by Plan provisions.  For example, under §9.10 of the Plan, "any further legal action taken against Plan or its fiduciaries ... must be filed in a court of law no later than 120 days after the Committee's final decision regarding the claim."  Doc. 17, Ex. A.  Similar plan provisions have

motion for leave to amend her complaint is phrased in terms of a dismissal of Counts One and Four without prejudice, the motion is denied.

## II. Defendants' Motion to Dismiss

## A. Standards

On October 5, 2010, defendants filed a motion to dismiss the first amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim for which relief may be granted. In ruling on a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded allegations in the complaint as true, and determine whether plaintiff undoubtedly can prove no set of facts in support of those allegations that would entitle him to relief. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bishop v. Lucent Technologies, Inc., 520 F.3d 516, 519 (6th Cir. 2008); Harbin-Bey v. Rutter, 420 F.3d 571, 575 (6th Cir. 2005). To survive a motion to dismiss, the "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. Id.

While the complaint need not contain detailed factual allegations, the "[f]actual allegations must be enough to raise the

---

been enforced. See, e.g., Rice v. Jefferson Pilot Financial Ins. Co., 578 F.3d 450, 454 (6th Cir. 2009)(three-year limitations period provided by plan was reasonable); Northlake Regional Medical Center v. Waffle House Sys. Employee Benefit Plan, 160 F.3d 1301, 1303-04 (11th Cir. 1998)(90-day limitations period in plan was reasonable). Thus, any attempt to re-assert Counts One and Four following a dismissal without prejudice may also require the court and the parties to address limitations issues.

claimed right to relief above the speculative level," <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007), and must create a reasonable expectation that discovery will reveal evidence to support the claim. <u>Campbell v. PMI Food Equipment Group, Inc.</u>, 509 F.3d 776, 780 (6th Cir. 2007). A complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. <u>Id</u>. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id</u>. at 1950. Where the facts pleaded do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief as required under Fed.R.Civ.P. 8(a)(2). <u>Ibid</u>.

In evaluating a motion to dismiss, a court generally is limited to the complaint and exhibits attached thereto. <u>Amini v. Oberlin College</u>, 259 F.3d 493, 502 (6th Cir. 2001). The court may consider a document or instrument which is attached to the complaint, or which is referred to in the complaint and is central to the plaintiff's claim. Fed.R.Civ.P. 10(c)("[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); <u>Weiner v. Klais & Co., Inc.</u>, 108 F.3d 86, 88 (6th Cir. 1997). In addition, if extrinsic materials merely

7

"fill in the contours and details" of a complaint, such materials may be considered without converting the motion to one for summary judgment.  Yeary v. Goodwill Indus.-Knoxville, Inc., 107 F.3d 443, 445 (6th Cir. 1997).  Where the plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading. Greenberg v. Life Ins. Co. of Virginia, 177 F.3d 507, 514 (6th Cir. 1999); Weiner, 108 F.3d at 89.  The defendants have filed a copy of the Plan as Exhibit A to their reply memorandum, and a copy of the appeal denial letter as Exhibit B to their reply memorandum.  Since both these documents were referenced in plaintiff's complaint, the court may consider them along with the complaint.

B. Failure to Specify Statutory Provisions

     Defendants argue that the first amended complaint is deficient because, with the exception of Count Four, which is identified as a claim for benefits pursuant to §1132(a)(1)(B), plaintiff fails to specify the ERISA statutory provisions upon which her claims are based.  This argument is not well taken.  A plaintiff is not required to plead legal theories or cases, or specify the statute or common law principle that a defendant has allegedly violated. Shah v. Inter-Contenal Hotel Chicago Operating Corp., 314 F.3d 278, 282 (7th Cir. 2002).  Even the failure to correctly categorize the legal theory giving rise to a claim does not require dismissal if the complaint otherwise alleges facts upon which relief can be granted.  See Gean v. Hattaway, 330 F.3d 758, 765 (6th Cir. 2003)(analyzing complaint under the IDEA and the Rehabilitation Act even though it specifically referred only to 42 U.S.C. §1983).

     Count One of the complaint asserts a claim for breach of fiduciary duty based on the alleged misrepresentations made to

8

plaintiff concerning her retirement benefits.  Since that count contains no claim for recovery on behalf of the Plan, it cannot be a claim for breach of fiduciary duty under 29 U.S.C. §1132(a)(2). Plan participants can only bring a civil action under §1132(a)(2) for breach of fiduciary duty if they are seeking recovery on behalf of the plan for an injury to the plan; that section does not permit participants to recover individually.  See Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 140 (1985); Loren v. Blue Cross & Blue Shield of Michigan, 505 F.3d 598, 608 (6th Cir. 2007). The only other statutory provision which can apply is 29 U.S.C. §1132(a)(3), which permits a participant to bring an action "to obtain other appropriate equitable relief (i) to redress" violations of ERISA such as a breach of fiduciary duty.  29 U.S.C. §1132(a)(3)(B).  See Varity Corp. v. Howe, 516 U.S. 489, 510 (1996)(holding that §1132(a)(3) was broad enough to cover individual relief for breach of a fiduciary obligation based on misrepresentations allegedly made by employer acting as an ERISA fiduciary).  The failure to specifically label that claim as one under §1132(a)(3) does not warrant dismissal.  Counts Two and Three are labeled as promissory estoppel and equitable estoppel claims. They are based on federal common law.  See Riverview Health Institute LLC v. Medical Mutual of Ohio, 601 F.3d 505, 521 (6th Cir. 2010).  This branch of defendants' motion is not well taken.

C. Liability of Defendants

Defendants argue that the complaint fails to adequately allege claims against the particular defendants because plaintiff does not allege how each of the defendants is liable, how each defendant qualifies as a fiduciary, or how the defendants breached a fiduciary duty.

Plaintiff alleges in the complaint that she used a website provided by Mars and/or the Committee for the calculation of benefits, and that the figure she arrived at was $5,365. First Am. Compl., ¶¶ 9-10. She further alleges that she spoke with an employee or agent of Mars and/or the Committee on February 11, 2009, and was told that her benefits would be $5,365 per month as of April, 2009. First Am. Compl., ¶¶ 11-12. Plaintiff also contends that she received two written statements from Mars and/or the Committee verifying that her benefit would be $5,364.63. First Am. Compl., ¶¶ 13-15. She further alleges that she again spoke with an employee and/or agent of Mars and/or the Committee on February 18, 2009, and was told that this figure was accurate. First Am. Comp., ¶ 16. She also allegedly received a letter from Mars and/or the Committee dated February 18, 2009, along with an election form which stated that she would receive $5,364.63 per month. First Am. Compl., ¶¶ 19-21. Plaintiff alleges that she accepted the payment option based solely on her reliance on the representations made to her on the website, by telephone, and in writing, as described above. First Am. Compl., ¶ 18.

In Count One, plaintiff alleges that the defendants exercise discretionary authority or control respecting the management of the plan and the disposition of its assets, and/or have discretionary authority or responsibility in the administration of the Plan. First Am. Compl., ¶ 31. Plaintiff further alleges that defendants are fiduciaries and that they were acting in a fiduciary capacity when they represented to her that her monthly payments would be $5,364.63. First Am. Compl., ¶¶ 32-33.

In Count Two, the promissory estoppel claim, plaintiff alleges that defendants promised that plaintiff would receive a monthly

10

benefit of $5,364.63, that defendants reasonably should have expected that this promise would induce her to choose this option, and that she did in fact choose this option. First Am. Compl., ¶¶ 38-42.

In Count Three, the equitable estoppel claim, plaintiff alleges that the representations made by defendants that her monthly benefits would be $5,364.63 were material, that defendants were aware that plaintiff was entitled to no more than $2,303.12 per month under the single life annuity with five-year certain pension payment option, that plaintiff reasonably believed that defendants intended for plaintiff to act on their representations, that plaintiff was unaware that she was only entitled to the lesser amount, and that plaintiff detrimentally and justifiably relied on the representations made by defendants. First Am. Compl., ¶¶ 43-49.

In Count Four, plaintiff asserts a claim for benefits under §1132(a)(1)(B). This claim is based on the allegations that plaintiff sent a formal claim letter to the Plan administrator, that her request for benefits in the amount of $5,364.63 was denied by the Committee, and that her appeal of that decision was denied by the Appeals Committee. First Am. Compl., ¶¶ 26-29.

The complaint is sufficient to state a claim against the Committee on all counts. As to the breach of fiduciary duty claim, under ERISA,

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to

11

> do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. §1002(21)(A). A fiduciary within the meaning of ERISA is someone acting in the capacity of manager, administrator, or financial adviser to a plan. <u>Pegram v. Herdrich</u>, 530 U.S. 211, 222 (2000). Under the statute, an administrator or manager of the plan is a fiduciary only "to the extent" that he exercises discretionary authority, control, or responsibility respecting the management of the plan, the disposition of its assets, or the administration of the plan. <u>Id.</u> at 225-226; §1002(21)(A).

Under the terms of the Plan, the Committee is designated as being the administrator of the Plan. Doc. 17, Ex. A, §1.4. The Committee has the authority to adopt rules, procedures and regulations for the administration of the Plan, to construe and interpret Plan provisions, to make factual determinations, to determine eligibility for benefits, and to hear and decide claims for benefits, including benefit claims appeals. Doc. 17, Ex. A, §9.4. Thus, the Committee qualifies as a fiduciary under ERISA. The complaint also includes sufficient facts concerning the Committee's alleged involvement in the alleged misrepresentations made to plaintiff and the denial of her claim for benefits. These allegations are sufficient to indicate that the Committee acted as a fiduciary.

The court finds that the allegations in the complaint are sufficient to identify Mars as a proper defendant to the promissory and equitable estoppel claims in Counts Two and Three. As to the breach of fiduciary duty claim in Count One, the record indicates that the Plan is maintained by Mars. Doc. 17, Ex. A, §1.1. Thus,

Mars is a "plan sponsor" as defined in 29 U.S.C. 1002(16)(B). Plaintiff summarily alleges that Mars "controls and/or exercises discretion over the funding and control of employee benefit plans, including" plaintiff's Plan. First Am. Compl., ¶ 2. The complaint also alleges that Mars was involved in making the alleged misrepresentations. However, the complaint fails to allege facts sufficient to show how Mars was acting in a fiduciary capacity in making the alleged misrepresentations to plaintiff.

To establish a claim for breach of fiduciary duty based on alleged misrepresentations concerning coverage under any employee benefit plan, a plaintiff must show that the defendant was acting in a fiduciary capacity when it made the challenged representations. Moore v. Lafayette Life Ins. Co., 458 F.3d 416, 433 (6th Cir. 2006). The facts alleged do not show that defendant Mars had any "discretionary authority or discretionary control respecting management of such plan" or that it "exercises any authority or control respecting management or disposition of [Plan] assets," or that defendant Mars had "any discretionary authority or discretionary responsibility in the administration of such plan" such as giving information or advice to plan participants. §1002(21)(A). The Plan itself provides that the Committee is the Plan administrator which has the binding authority to determine all questions concerning the eligibility for benefits and the amount of benefits. Doc. 17, Ex. A, §§1.4, 9.4. Under the terms of the Plan, the Committee has the power to delegate all or part of its powers, rights and duties to other individuals, committees or third parties. Doc. 17, Ex. A, §§9.4(a), 9.5(a). However, the complaint does not allege that the Committee has delegated any of its authority to defendant Mars or any agents or employees of Mars.

13

Thus, the complaint fails to state a claim for breach of fiduciary duty against Mars.

The complaint also fails to state a claim for benefits against Mars under §1132(a)(1)(B). The proper defendant in an ERISA action concerning benefits is the plan administrator. See Riverview Health Institute LLC, 601 F.3d at 522. An employer is not a proper party defendant in an action concerning benefits unless the employer "'is shown to control administration of the plan.'" Gore v. El Paso Energy Corp. Long Term Disability Plan, 477 F.3d 833, 842 (6th Cir. 2007)(quoting Daniel v. Eaton Corp., 839 F.2d 263, 266 (6th Cir. 1988)). In other words, the defendant in a §1132((a)(1)(B) action must be the parties or entities which made the decision to deny benefits, in this case, the Committee and the Appeal Committee. Counts One and Four, insofar as they pertain to defendant Mars, will be dismissed.

In regard to the Appeals Committee, the complaint contains no allegations that the Appeals Committee made any misrepresentations to plaintiff about her benefits. Therefore, Counts One, Two and Three, insofar as they pertain to the Appeals Committee, will be dismissed. In regard to Count Four, the denial of benefits claim, the record reveals that the letter denying plaintiff's appeal was from the Appeals Committee. Doc. 17, Ex. B. The letter states that the Committee "has delegated to the Appeals Committee the absolute discretionary authority and power to review and decide all claim appeals under the Plan." There is sufficient information in the complaint and related documents to support the claim against the Appeals Committee for denial of benefits asserted in Count Four.

14

D. Counts One through Three as Distinct Claims

     Defendants argue that plaintiff cannot pursue the claim for
breach of fiduciary duty in Count One and the estoppel claims in
Counts Two and Three because she has asserted a claim for benefits
in Count Four.

     In Varity Corp., the Supreme Court noted that "ERISA
specifically provides a remedy for breaches of fiduciary duty with
respect to interpretation of plan documents and the payment of
claims" through a cause of action under §1132(a)(1)(B).  516 U.S.
at 512.  The remedy for "other breaches of other sorts of fiduciary
obligation" may be sought under the "catchall" provision in
§1132(a)(3).  Id.  The Supreme Court concluded that "where Congress
elsewhere provided adequate relief for a beneficiary's injury,
there will likely be no need for further equitable relief, in which
case such relief would normally not be appropriate."  Id., 516
U.S.. at 515.  The Sixth Circuit in Wilkins v. Baptist Healthcare
Sys. Inc., 150 F.3d 609 (6th Cir. 1998), interpreted Varity Corp.
as limiting "the applicability of §1132(a)(3) to beneficiaries who
may not avail themselves of §1132's other remedies."  150 F.3d at
615; see also Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478,
491 (6th Cir. 2009)(relief under §1132(a)(3) not appropriate where
plaintiff merely "repackages" a §1132(a)(1)(B) benefits claim).

     Subsequently, in Hill v. Blue Cross and Blue Shield of Mich.,
409 F.3d 710, 718 (6th Cir. 2005), the Sixth Circuit recognized
that there are some circumstances under which an ERISA plaintiff
may simultaneously bring claims under both §1132(a)(1)(B) and
§1132(a)(3).  The court held that where an award of individual
benefits pursuant to §1132(a)(1)(B) could not provide an adequate
remedy for the alleged injury to the plaintiffs caused by a breach

of fiduciary duties, outright dismissal of the plaintiffs'
§1132(a)(3) claims was in error. Id.

In Gore, 477 F.3d at 840, the court examined the nature of the
plaintiff's claims, and concluded that plaintiff had alleged two
separate and distinct injuries: an erroneous interpretation of plan
language by the plan administrator resulting in a wrongful denial
of long-term disability benefits, and a claim based on the
misrepresentations of the employer concerning the duration of those
benefits as being for two years rather than one year. The court
concluded that neither §1132(a)(1)(b) nor §1132(a)(2) provided a
remedy for the alleged misrepresentation by the employer. The
court noted that if plaintiff had alleged that the plan
administrator breached its fiduciary duty by wrongfully denying
benefits, that claim would be duplicative of his denial of benefits
claim. Id. at 841. Instead, the plaintiff in Gore alleged a
distinct injury through a breach of fiduciary duty in the form of
a misrepresentation by the employer concerning the duration of
benefits. Id. The court also observed that the fact that
plaintiff's claim for breach of fiduciary duty in that case would
be rendered moot if plaintiff prevailed on his claim for benefits
against the plan administrator did not mean that the breach of
fiduciary duty claim was nothing more than a "repackaged denial of
benefits claim." Id. Although two fiduciaries were involved in
Gore, the court noted that the Sixth Circuit would recognize a
§1132(a)(3) claim as separate from a §1132(a)(1)(B) claim even
against the same fiduciary. Id. at 842 (citing Marks v. Newcourt,
342 F.3d 444, 454 n. 2 (6th Cir. 2003)). The court concluded that
since the plaintiff's breach of fiduciary duty claim based on
misrepresentation could not have been characterized as a denial of

16

benefits claim, the dismissal of the §1132(a)(3) claim was error.

In Jones v. American General Life and Accident Ins. Co., 370 F.3d 1065, 1071 (11th Cir. 2004), the plaintiffs pled a claim under §1132(a)(1)(B), but also pled a claim for breach of fiduciary duty based on misrepresentation under §1132(a)(3) in the alternative, assuming that they could not recover under §1132(a)(1)(B). The court stated that the district court should have considered whether the allegations supporting the §1132(a)(3) were also sufficient to state a cause of action under §1132(a)(1)(B), regardless of the relief sought, before dismissing the §1132(a)(3) claim as a duplicate benefits claim. Id. at 1073-74. The court concluded that because plaintiffs conceded, for purposes of the §1132(a)(3) claim, that they were not entitled to the benefit they sought under the terms of their plan, under such circumstances §1132(a)(3) would provide the only remedy, and that the district court erred in dismissing that claim.

In the instant case, plaintiff's claim for breach of fiduciary duty under §1132(a)(3) is based on misrepresentation. The Sixth Circuit has stated that "[a] fiduciary breaches his duty by providing plan participants with materially misleading information, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally." James v. Pirelli Armstrong Tire Corp., 305 F.3d 439, 449 (6th Cir. 2002). "Misleading communications to plan participants regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for a breach of fiduciary duty." Drennan v. General Motors Corp., 977 F.2d 246, 251 (6th Cir. 1992). A misrepresentation is material "if there is a substantial likelihood that it would mislead a reasonable employee in making an

adequately informed decision in pursuing disability benefits to which she may be entitled." _Krohn v. Huron Memorial Hosp._, 173 F.3d 542, 547 (6th Cir. 1999).

Plaintiff alleges that multiple misrepresentations were made to her by the Committee on the Committee's website, by telephone, and in writing concerning what her monthly benefit would be if she began receiving benefits in 2009. First Am. Compl., ¶¶ 9-16, 19-21. Plaintiff alleges that she accepted the payment option based solely on her reliance on the representations made to her on the website, by telephone, and in writing, as described above. First Am. Compl., ¶ 18. Whether plaintiff is entitled to equitable relief based on the fact that plaintiff elected to begin receiving retirement benefits when she did (prior to reaching age 65) based on the misrepresentations that her benefit would be $5,364.63 involves issues completely distinct from whether plaintiff was actually entitled to the greater benefit under the terms of the Plan. The allegations in plaintiff's claim for breach of fiduciary duty do not refer to any entitlement to the greater benefit under the terms of the Plan, and are not sufficient to state a claim under §1132(a)(1)(B). Thus, it is not simply a repackaged benefits claim. Additionally, if plaintiff is correct when she states in her memorandum contra, Doc. No. 14 at p. 7, that she is only entitled to $2,303.12 per month under the terms of the Plan, and she decides to abandon her §1132(a)(1)(B) claim completely, then the only other ERISA statute which could conceivably afford her the relief she seeks is §1132(a)(3), and dismissal of that claim at this stage of the case would be premature.

Plaintiff's claims of estoppel in Counts Two and Three are based on federal common law. The Sixth Circuit has not resolved

18

the issue of whether an equitable or promissory estoppel claim based on misrepresentations could be categorized as a §1132(a)(1)(B) claim or a §1132(a)(3) claim. See Gore, 477 F.3d at 841-42. Regardless of whether the estoppel claims can be reclassified as falling within the statutory framework of §1132(a), the estoppel claims are also based on the alleged misrepresentations made to plaintiff, not to plaintiff's actual entitlement to benefits under the terms of the Plan, and are not simply repackaged benefits claims.

Defendants note that in her prayer for relief, plaintiff requests retirement benefits of $5,364.63. However, read in context, plaintiff requests "equitable and injunctive relief in the form of retirement benefits of $5,364.63." First Am. Compl., ¶ 51. The Sixth Circuit has stated that in cases of misrepresentation, the court has "awarded equitable relief, including denied benefits." Del Rio v. Toledo Edison Co., 130 Fed.Appx. 746 (6th Cir. April 29, 2005); see also Krohn, 173 F.3d at 551 (concluding that plaintiff's employer was liable for lost benefits that plaintiff sustained due to employer's failure as a fiduciary to inform plaintiff about the availability of long-term disability benefits). The fact that plaintiff states in her complaint that she is seeking to obtain the higher retirement benefit by way of equitable and injunctive relief does not automatically convert her equitable claims into a claim for Plan benefits under §1132(a)(1)(B).

Plaintiff's claims of breach of fiduciary duty and estoppel are not simply restated benefit claims under §1132(a)(1)(B), and this branch of defendants' motion to dismiss is denied.

E. Viability of Estoppel Claims

In Count Two, plaintiff asserts a claim of promissory estoppel, and in Count Three, plaintiff asserts a claim of equitable estoppel. These forms of estoppel have been recognized as viable theories in ERISA cases, and are treated the same way. Bloemker v. Laborers' Local 265 Pension Fund, 605 F.3d 436, 440 (6th Cir. 2010). Defendants argue, based on Armistead v. Vernitron Corp., 944 F.2d 1287 (6th Cir. 1991), that the Sixth Circuit does not recognize the estoppel theory in pension plan cases. Although the court in Armistead referred to cases which discussed reasons for not applying the estoppel theory to pension plans, usually multi-employer plans, the court decided only that the estoppel theory was available in cases involving welfare benefit plans, and expressed "no opinion as to the application of estoppel principles to other situations." Id. at 1300. Thus, the issue of whether estoppel can be invoked in cases involving pension plans was not decided in Armistead. More recently, in Bloemker, the Sixth Circuit expressly decided that estoppel claims can be asserted in pension cases where the representation was made in writing and where plaintiff can demonstrate extraordinary circumstances. See 605 F.3d at 440.

Defendants also rely on Sprague v. General Motors Corp., 133 F.3d 388 (6th Cir. 1998), in which the Sixth Circuit states that "[p]rinciples of estoppel, however, cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." Id. at 404. The court reasoned in that case that estoppel requires reasonable reliance, and that a party's reliance "can seldom if ever, be reasonable or justifiable if it is inconsistent with the clear and

20

unambiguous terms of plan documents available to or furnished to the party." Id.  The court also noted that "to allow estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves.  That would not be consistent with ERISA."  Id.

However, the Sixth Circuit decided in Bloemker that the reasons articulated in Sprague for not permitting an estoppel claim in the face of unambiguous plan documents were outweighed in that case by the extraordinary circumstances which were present.  The court noted that the first rationale was inapplicable because the plaintiff alleged that it would have been impossible for him to determine his correct pension benefit given the complexity of the actuarial calculations and his lack of knowledge about the relevant actuarial assumptions. Bloemker, 605 F.3d at 443.  The court also noted that the concept of the enforcement of something other than plan documents being inconsistent with ERISA was not applied in all cases.  In fact, as the Bloemker court noted, the Sixth Circuit in Armistead rejected defendant's argument that applying estoppel was always inconsistent with ERISA and held that estoppel was permissible even though "[e]quitable estoppel ... precludes a party from exercising contractual rights because of his own inequitable conduct toward the party asserting the estoppel." Id. at 443-44 (quoting Armistead, 944 F.2d at 1299).

The court in Bloemker held that a plaintiff can invoke equitable estoppel in the case of unambiguous pension plan provisions where plaintiff can demonstrate the traditional elements of estoppel, including that the defendant engaged in intended deception or such gross negligence as to amount to constructive fraud, plus (1) a written representation; (2) plan provisions

which, although unambiguous, did not allow for individual calculation of benefits; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel. Id. at 444.

The elements of an equitable estoppel claim are : (1) conduct or language amounting to a representation of material fact; (2) awareness of the true facts by the party to be estopped; (3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; (4) unawareness of the true facts by the party asserting the estoppel; and (5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

Plaintiff has alleged sufficient facts in her first amended complaint to satisfy the elements of estoppel. The statement that plaintiff was entitled to a monthly pension benefit in the amount of $5,364.63 was a material fact. See Bloemker, 605 F.3d at 443. As in Bloemker, plaintiff has alleged that defendants were aware of the true facts, that she was entitled to no more than $2,303.12 per month under the Plan. See id.; First Am. Compl., ¶ 45. The alleged conduct of the defendants in repeatedly informing plaintiff that $5,364.63 would be her monthly benefit was such that plaintiff had a right to believe, as she alleges, that defendants intended their statements to be acted on by plaintiff. See id.; First Am. Compl., ¶ 46. Plaintiff has alleged that she was unaware of the true facts. First Am. Compl., ¶ 47. Finally, plaintiff has pleaded sufficient facts that she detrimentally and justifiably relied on the representations made to her by electing to receive

benefits, by making purchase decisions and entertainment plans, doing landscaping projects and undertaking home improvements. First Am. Compl., ¶¶ 18, 48.  The additional requirement of a writing is also satisfied in this case, as plaintiff has alleged that she received several written statements from defendants indicating that her benefit would be $5,364.63.  First Am. Compl., ¶¶ 13-15, 20.

Defendants argue that plaintiff has not pleaded extraordinary circumstances, and that she has not pleaded facts sufficient to show that she justifiably relied on the representations she received in light of the unambiguous terms of the Plan.  The instant case is similar to the situation in Pell v. E.I. DuPont de Nemours & Co., Inc., 539 F.3d 292, 304 (3rd Cir. 2008), in which the court concluded that extraordinary circumstances were shown where the defendant made repeated misrepresentations to plaintiff over an extended period of time, and where the plaintiff was persistent and diligent in trying to obtain accurate answers regarding his wife's coverage.  In this case, plaintiff has alleged that she started by using the website provided by the Committee, then called to see if her calculations were correct and was told that they were correct.  She received two written statements, and then called again to ask if the written statements were correct. She thereafter received an election form which also stated that her benefit would be $5,364.63.  Thus, plaintiff has also alleged that defendants' representations were repeated and consistent, and that she was diligent in trying to obtain correct information.

Plaintiff has also pleaded sufficient facts to show that her reliance was justifiable.  As the court stated in Pell, "[i]f we were to accept DuPont's argument that Pell could not rely on his

pension estimates, employees such as Pell would be required to continually question their benefits calculations, even if they agreed with their employers' estimates.  We decline to formulate such a burdensome rule."  539 F.3d at 302.

Defendants note that the plaintiff in Bloemker received pension benefits in the enhanced amount for two years and was required to pay back the excess, whereas the plaintiff in this case received the erroneous benefit for five months.  Defendants also note the Appeals Committee denial letter, which reports that Mars reimbursed the Plan for the overpayment, and that plaintiff was not required to pay back the excess.  However, the court in Bloemker also considered as an extraordinary circumstance the fact that the plaintiff alleged that it would have been impossible for him to determine his correct pension benefit given the complexity of the calculations.  Bloemker, 605 F.3d at 443.  Although the plaintiff in this case does not specifically make such allegations, it is apparent from the Plan and other documents supplementing the complaint that, even assuming that the Plan terms are unambiguous, the actuarial calculations are also complicated.  The Plan itself, with multiple supplements, is over one hundred pages long.  The denial letter from the Appeals Committee reveals that the calculation of plaintiff's benefits was complicated by the fact that plaintiff was formerly enrolled in the Mars Retirement Plan and switched to the ARP formula in 2004.  Doc. 17, Ex. B.  Thus, her ARP benefit required ascertaining her "grandfathered MRP benefit" because her ARP benefit could not be lower than the grandfathered MRP benefit.  Id., p. 2.  The letter further stated that the Plan's benefit payment system was erroneously programmed to compare her ARP benefit to her MRP benefit payable at age 65,

instead of her grandfathered MRP benefit.  Because the MRP benefit
payable at age 65 was not subject to an actuarial reduction, that
benefit was greater than the ARP benefit payable, and therefore the
payment system automatically paid the higher amount in error.  Id.
The mere fact that even the Plan administrator allegedly was not
capable of accurately calculating plaintiff's benefit or of
programming its computer to do so indicates that a case could be
made that plaintiff could not reasonably be expected to catch any
errors in these complex calculations herself.

This court concludes that the rules announced in Bloemker
control the instant case, and that plaintiff's first amended
complaint and the related documents allege sufficient facts to
support all of the elements necessary for an estoppel claim in a
pension plan case.

III. Conclusion

In accordance with the foregoing, plaintiff's motion (Doc. No.
15) to amend her complaint by dismissing Counts One and Four of the
first amended complaint without prejudice is denied.  Defendants'
motion to dismiss (Doc. No. 12) is granted in part and denied in
part.  The motion is granted in regard to the claims in Counts One
and Four insofar as they are asserted against defendant Mars, Inc.,
and granted in regard to the claims in Counts One, Two and Three
insofar as they are asserted against defendant Mars Benefit Plans
Appeals Committee.  The motion is denied in all other respects.


Date: May 11, 2011               s/James L. Graham
                          James L. Graham
                          United States District Judge